UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOHN LAHNANEN, on behalf of himself and all others similarly situated,  )<br><br>Plaintiff,  )<br><br>vs.  )<br><br>GENERAL ALUMINUM MANUFACTGURING COMPANY,  )<br><br>Defendant.  ) | CASE NO.: 5:20-cv-1066<br><br>MAGISTRATE JUDGE KATHLEEN BURKE<br><br>**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT** |

**I.    INTRODUCTION**

Plaintiff John Lahnanen ("Representative Plaintiff, "Class Representative," or "Plaintiff"), on behalf of himself and the members of proposed settlement Class ("Class Members"), and General Aluminum Manufacturing Company ("Defendant"), respectfully move this Court to preliminarily approve the Class Action Settlement Agreement ("Settlement Agreement" or "Settlement") between Plaintiff and Defendant pursuant to Fed. R. Civ. P. 23(e).

In support of this motion, Representative Plaintiff and Defendant submit the Settlement Agreement and its exhibits, (*see* **Exhibit 1**), which consist of the following documents and proposed orders:

    Exhibit A:    List of Plaintiffs-Class Members

    Exhibit B:    Confidential Agreement and General Release as Class Representative

    Exhibit C:    Preliminary Order Approving Settlement and Notice

    Exhibit D:    Class Notice

    Exhibit E:    Final Order and Judgment Entry

1

Representative Plaintiff and Defendant request that the Court grant preliminary approval of the Settlement, designate Representative Plaintiff as Class Representative, preliminarily approve Class Representative's request for a Service Award, designate Plaintiffs' counsel as Class Counsel, preliminarily approve Class Counsel's request for attorneys' fees, and direct distribution of notice to the Class by entering the proposed Preliminary Order attached to the Settlement Agreement as Exhibit D.  Following the Fairness Hearing, Representative Plaintiff and Defendant will request that the Court grant final approval of the Settlement by entering the proposed Final Order and Judgment Entry attached to the Settlement Agreement as Exhibit E.

The following schedule sets forth a proposed sequence for the Settlement:

- Ten (10) days after Preliminary Approval: Defendant will provide Class Counsel a spreadsheet containing the names, last known addresses, and email addresses of the Class Members;

- Twenty (20) days after Preliminary Approval: Class Counsel will mail Notice to the Class Members;

- Thirty (30) days after mailing of Class Notice: Last day for Class Members to "opt-out" of the Settlement and submit written objections to the Settlement;

- Forty-Five (45) days after mailing of Class Notice: Last day for filing and serving of papers in support of final Settlement approval;

- Forty-Five (45) days after mailing of Class Notice: Class Counsel will file a Declaration verifying that the Class Notice was distributed, and the Parties will submit the proposed Estimated Schedule of Individual Payments and an updated version of the proposed Final Order and Judgment Entry;

- Sixty (60) days after mailing of Class Notice **[DATE TO BE SET BY COURT]**: Final Settlement approval hearing at **[TIME TO BE SET BY COURT]**;

- Thirty-One (31) days after the Court's Final Order and Judgment Entry: the Effective Date; and

- Twenty (20) days after the Effective Date: Defendant or the applicable temporary service provider will mail the settlement funds to Representative Plaintiff and the Class Members, the Service Award to Representative Plaintiff, and the attorneys' fees and reimbursement of litigation expenses to Class Counsel.

As explained below, the Settlement Agreement was reached during arms-length negotiations between the Parties, which were conducted by experienced counsel following investigation, and on the basis of mutual recognition of the strengths and weaknesses of each other's positions.

II. **FACTUAL AND PROCEDURAL BACKGROUND**

A. **The Action**

On May 15, 2020, Plaintiff filed this Action as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219 and as a class action pursuant to Fed. R. Civ. P. 23 under the Ohio Minimum Fair Wage Standards Act ("OMFSWA") (Doc. No. 1).

The action contests Defendant's alleged failure to properly pay Plaintiff and its hourly employees overtime pay. Specifically, Plaintiff alleges that Defendant failed to properly roll non-discretionary attendance bonuses into its hourly employees' overtime pay; that Defendants failed to properly roll shift differentials into its hourly employees' overtime pay; and improperly rounded its hourly employees' timeclock punch-in and punch-out times. (Doc. 1). Defendant denies these allegations. (Doc. No. 7).

B. **Negotiation of The Settlement**

Shortly after this case was filed, the parties began discussing the possibility of early resolution. To that end, the parties engaged in informal discovery regarding the alleged claims and asserted defenses. (See Declaration of Jeffrey Moyle, attached as Exhibit 2 ("Moyle Decl.") at ¶ 9). Specifically, Defendant produced certain wage and hour information of randomly selected 10% subset of Class Members (10%) selected by defense counsel. This information included: the raw punch clock data for the 10% subset beginning May 15, 2017; the payroll records for the 10% subset; and information regarding the shift differential paid to each member of the 10% subset. (*Id.*). Class Counsel, in conjunction with its consultant, calculated the

alleged unpaid overtime for each of the randomly selected Class Members, extrapolated that data across the entire class, and created a proposed damages model, which Class counsel shared with Defendant.[1] (*Id.*).

On April 14, 2021, the parties engaged in mediation with well-respected mediator and former Lake County Court of Common Pleas Judge Joseph Gibson. The parties reached a resolution at the mediation. (Moyle Decl., ¶ 10). Under the terms reached at mediation, the parties agree that there are disputes about whether any violation occurred, whether Defendant's actions were willful, whether a two or three-year lookback period should apply and whether liquidated damages are appropriate under the circumstances. Defendant contends that no violation occurred, Defendant's actions were not willful, a two-year lookback period should apply in any event and liquidated damages are not appropriate under the circumstances. Defendant has not admitted any wrongdoing.

### C. The Settlement Terms

The terms of the Settlement Agreement include: the total Settlement Payment to be made by Defendant, the Effective Date of the Settlement, the calculation of Individual Payments to eligible recipients, the process for distributing Individual Payments to recipients, the proposed Service Award to Representative Plaintiff in recognition of his service in this Action and the providing of a general release, and the proposed distribution of reasonable attorneys' fees and expense reimbursements to Class Counsel. (*See* **Exhibit 1**).

The persons eligible for Individual Payments consist of Representative Plaintiff and members of the proposed settlement class. The definition of the settlement class encompasses

---

[1] Defendant does not concede that Plaintiff's damages model is correct or accurately reflects the Class' alleged damages, or that the Class has any damages.

743 current and former hourly employees of Defendant who worked more than forty hours in one or more workweeks during the period of May 15, 2017 to June 30, 2020.

The Class Members will release federal and state wage-and-hour claims, rights, demands, liabilities and causes of action asserted in Plaintiff's Complaint, including but not limited to claims for unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees, and expenses, pursuant to the Fair Labor Standards Act and any applicable state wage statute where Class Members may have worked for Defendant, including but not limited to relevant State Claims and to the Ohio Minimum Fair Wage Standards Act through the Release Period. (Ex. 1, ¶ 28).  The "Release Period" for Plaintiff and the Class shall mean the period between May 15, 2017 and the date the District Court enters final approval.  (*Id.*, ¶ 30).

The Individual Payments for which Class Members will be distributed *pro rata* based on the number of workweeks each Class Member worked during the Covered Period in comparison to the total number of workweeks worked by all Class Members during that period.  The Calculation Period for Representative Plaintiff and the Class shall mean the period between May 17, 2017 and the date of final Court approval. (*Id.*, ¶ 6).

### III. THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

The proposed class settlement is subject to approval by the Court pursuant to Fed. R. Civ. P. 23(e).  As shown below, the Court's preliminary approval is warranted.

#### A. Preliminary Approval of the Settlement Under Rule 23(b) Is Warranted

##### 1. Certification of the Settlement Class Is Appropriate

A proposed settlement class must satisfy the requirements of Rule 23.  *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997)).  The proposed Class satisfies those requirements.

The proposed class meet Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. *See Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir.), *cert. denied*, 429 U.S. 870 (1976); *UAW v. General Motors Corp.,* 497 F.3d at 626. The Class, consisting of 743 members, is "so numerous that joinder of all members is impracticable." Common issues of law or fact are presented by the Class's claims under the OMFWSA, including:

   a) Whether Defendant miscalculated the overtime compensation it paid to Plaintiff and the Class Members by excluding bonus payments from the calculation of their "regular rates" for purposes of overtime compensation;

   b) Whether Defendant miscalculated the overtime compensation it paid to Plaintiff and the Class Members by excluding shift differential pay from the calculation of their "regular rates" for purposes of overtime compensation;

   c) Whether Defendant improperly rounded Plaintiff and the Class Members' punch-in and punch-out times;

   d) Whether Plaintiff and the Class Members were denied overtime wages as a result of Defendants' alleged practices.

Plaintiff is an adequate representative of the Class, in that he has common interests with other class members and he has vigorously prosecuted the interests of the class through qualified counsel. *Rutherford v. City of Cleveland*, 137 F.3d 905 (6th Cir. 1998).

The Class further satisfies Rule 23(b)(3)'s requirements of predominance and superiority. *Senter*, 532 F.2d at 522; *UAW v. General Motors Corp.,* 497 F.3d at 626. The unpaid overtime issues presented under the OMFWSA predominate over any individual questions. Class-wide resolution of this controversy is superior to the alternative of litigating 743 individual suits. *General Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982) (class certification advances "the efficiency and economy of litigation which is a principal purpose of the procedure"); *Day v.*

*NLO*, 851 F. Supp. 869, 883 (S.D. Ohio 1994) (of equal importance "are considerations of the avoidance of the inequality resulting from piecemeal litigation as well as a concern to provide access to the courts for litigants with limited resources and common claims").

### 2. The Class Notices Satisfy Rule 23 and Due Process

Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the settlement. *Bailey v. White*, 320 Fed. Appx. 364, 2009 WL 928595 (6th Cir. 2009). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).

Reasonable notice to class members is required by due process as well. *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (citing *DeJulius v. New England Health Care Employees Pension Fund,* 429 F.3d 935, 943-44 (10th Cir.2005) (citing *Mullane,* 339 U.S. at 313; *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974). Due process "does not, however, require *actual* notice to each party intended to be bound by the adjudication of a representative action." *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (emphasis by the court) (citing *DeJulius,* 429 F.3d at 944 (citing *Mullane,* 339 U.S. at 313-14); *In re Integra Realty Res., Inc.,* 262 F.3d 1089, 1110-11 (10th Cir. 2001); *Silber v. Mabon,* 18 F.3d 1449, 1453-54 (9th Cir.1994))). The issue is not whether all class members received notice, "but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." *Fidel*, 534 F.3d at 514 (quoting *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir.1993)).

The "individual notice" requirement of Rule 23 and due process is fulfilled by sending written notice to class members by first-class mail at the addresses shown in the defendant's

7

business records. *Grunin v. International House of Pancakes* (8th Cir. 1975), 513 F.2d 114, 120, *cert. denied* (1975), 423 U.S. 864 (1975) (citing *Eisen*, 417 U.S. at 172-77). The Eighth Circuit noted that, in *Eisen*, "the Supreme Court specifically held that individualized notice by mail to the last known address was the 'best notice practicable' in a class action." *Grunin*, 513 F.2d at 121.

In the present case, the proposed Class Notice satisfies these requirements. Under the terms of the Settlement Agreement and the proposed Preliminary Order, the Notices will be sent to the members of the class by first-class mail using the addresses shown in Defendant's records.

    **B.**    <u>**Approval of the Settlement Under Rule 23(e) Is Warranted**</u>

Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate" under a seven-factor standard discussed below. *UAW v. General Motors Corp.*, 497 F.3d 615, 626 (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)).

The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Such actions, by their nature, involve uncertainties of outcome, difficulties of proof, and lengthy litigation, and lend themselves readily to compromise. 4 Newberg On Class Actions § 11.41 (4th ed. 2007) (citing cases). Therefore, when considering the below factors, the courts apply a "strong presumption" in favor of finding a settlement to be fair. *Dail v. George A. Arab, Inc.,* 391 F. Supp. 2d 1142, 1145-46 (M.D. Fla. 2005) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). *Accord, Sweet v. General Tire & Rubber Co.*, 1982 WL 278, *5 (N.D. Ohio Mar. 17, 1982).

### 1. The Seven-Factor Standard Is Satisfied

The Sixth Circuit uses seven factors to evaluate class action settlements:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)), *quoted in Crawford*, 2008 WL 4724499 at *3.

As shown below and in the Declaration of Jeffrey Moyle, the seven-factor standard supports approval of the Settlement.

#### a) No Indicia of Fraud or Collusion Exists

The Parties' counsel each have extensive experience litigating wage and hour claims, including claims for unpaid hours worked. (*See* Moyle Decl., ¶ 6). A Settlement Agreement was achieved only after arms-length and good faith negotiations between the Parties after mediation through a third party. (*Id.*, ¶ 10). As such, there is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *White v. Premier Pallet & Recycling, Inc.*, No. 5:18-cv-1460, 2018 U.S. Dist. LEXIS 174414, at *4 (N.D. Ohio Oct. 10, 2018) (citation omitted).

#### b) The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval

The policy favoring the settlement of class actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. *See, Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *8 (S.D. Ohio Aug. 17, 2018) ("[m]ost class actions are inherently

9

complex and settlement avoids the costs, delays, and multitude of other problems associated with them") (citations omitted). Moreover, the Parties continue to disagree over the merits of Plaintiffs' claims, including whether Defendant is liable for any damages, whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applies, and whether Plaintiff and the class would be entitled to liquidated damages if they were to prevail on the merits. (Moyle Dec. ¶ 14).

If forced to litigate this case further, the Parties would certainly engage in complex, costly and protracted wrangling. The Settlement, on the other hand, provides substantial relief to Representative Plaintiff and the Class Members promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution. (*Id.*, ¶ 15).

### c) *Investigation Was Sufficient to Allow the Parties to Act Intelligently*

The Parties engaged in substantial investigation prior to negotiating the Settlement Agreement. (*Id.*, ¶¶ 12, 17-23). Relevant information was exchanged resulting from Plaintiff's allegations that Defendant failed to pay overtime compensation to Plaintiff and the Class Members. (*Id.*, ¶ 9). In addition, Class Counsel obtained data about randomly selected Class Members, and issues in the case were thoroughly researched by counsel for the Parties. (*Id.*). All of aspects of the dispute are well-understood by both sides.

### d) *The Risks of Litigation Favor Approval*

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raised affirmative defenses to Plaintiff's claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all.

10

> *e)*   *Uncertainty of Recovery Supports Approval*

Plaintiffs' range of possible recovery is also open to dispute. Even if Plaintiffs succeed on the merits of their claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree.

> *f)*   *Experienced Counsel's Views Favor Approval*

The Parties' counsel are experienced in wage-and-hour class actions, have acted in good faith, and have represented their clients' best interests in reaching the Settlement Agreement. Counsel support the Settlement Agreement as fair and reasonable, and in the best interest of the Class as a whole. (Moyle Decl., ¶¶ 14).

### 2.  **The Settlement Distributions Are Fair, Reasonable and Adequate**

As a part of the scrutiny it applies to a wage and hour settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Murton v. Measurecomp, LLC*, No. 1:07CV3127, 2009 U.S. Dist. LEXIS 144222, at *22 (N.D. Ohio Aug. 10, 2009). In the present case, the Settlement Agreement provides that Defendant's Settlement Payment, after deduction of the Service Award to Representative Plaintiff, attorneys' fees, and litigation reimbursements to Class Counsel, will be distributed *pro rata* Individual Payments based on the number of workweeks each Class Member worked during the Covered Period for which participants in the settlement will be eligible. All components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable and adequate for Plaintiff and the Class Members.

> *a)*   *The Individual Payments Are Reasonable and Adequate*

All Individual Payments will be distributed *pro rata* based on the number of workweeks each Class Member worked during the Covered Period in comparison to the total number of workweeks worked by all Class Members during that period, for alleged damages resulting from Defendant's alleged failure to properly pay overtime wages during the Calculation Period. The Calculation Period for Plaintiff and the Class shall mean the period between May 15, 2017 and the date of final Court Approval. (**Exhibit 1**, ¶6).

If approved by the Court, the Proposed Settlement will provide substantial payments to Representative Plaintiff and the Class Members for unpaid overtime compensation. Plaintiff's Counsel used a software program called TreeAge Pro (https://www.treeage.com/) to create a decision tree of various case events (*e.g.*, conditional certification, dispositive motions, trial, etc.), the subjective probability of success at each event, and the probabilities that various damages awards would occur. (Moyle Decl., ¶ 19). TreeAge compounds the probabilities of success and risk of loss at each case event, factors in the probability of different damages scenarios, and provides an "expected value" calculation, which, in general terms, is a mathematical formula that adds the sum of the variables multiplied by the probability that the variable will occur. The expected value serves as a guidepost we use to determine whether a proposed settlement would be fair and equitable for the class. (*Id.* at ¶ 20). The Settlement exceeds the expected value of this case, which further confirms Class Counsel's opinion that the settlement is fair and reasonable, and is in the best interest of the Class Members. (*Id.* at ¶ 23).

      b)  *Representative Plaintiff's Service Award Is Proper and Reasonable*

The Settlement Agreement provides for a service award of $5,000 to Plaintiff, in addition to his individual payment. Courts routinely approve service awards to named plaintiffs in class and collective action litigation, because service awards "are efficacious ways of encouraging

12

members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (N.D. Ohio Mar. 8, 2010).

Here, Plaintiff contributed significant time, effort, and detailed factual information enabling Plaintiff's counsel to evaluate the strength of this case, and reach a settlement of this matter that, in Counsel's opinion, fairly and adequately compensates the class for alleged unpaid wages. As such, the time and efforts Plaintiff provided supports the requested service payments. (Moyle Dec. ¶ 24).

### c) *The Attorneys Fees and Expenses to Class Counsel Are Proper and Reasonable*

After the Court has confirmed that the terms of settlement are fair to the Settlement Class, it may review the Parties' agreement as to the provision of fees and costs to Plaintiff's Counsel. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied*, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

13

Here, Plaintiff is requesting that the Court preliminarily approve as reasonable attorneys' fees of $54,166.67, representing one-third of the settlement fund. "In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund." *Carr v. Bob Evans Farms*, No. 1:17-CV-1875, 2018 U.S. Dist. LEXIS 228221, at *10-11 (N.D. Ohio July 27, 2018); *see also, Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 U.S. Dist. LEXIS 78222, at *6 (N.D. Ohio May 4, 2018) ("One-third of the common fund is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'") (citation omitted).

Further, Plaintiff's counsel accepted this case on a contingent fee basis and advanced all litigation fees, costs and expenses. (Moyle Dec. ¶ 25). "In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *19 (S.D. Ohio Dec. 3, 2019); *see also, Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *15 (N.D. Ohio Mar. 26, 2019) ("Class Counsel provided representation on a purely contingency fee basis, advancing all litigation costs and receiving no payment unless [and] until there was a recovery, and should be compensated for that risk").

Finally, Courts in this district acknowledge that "[w]age-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *16 (N.D. Ohio Mar. 26, 2019).  Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of the settlement fund appropriately compensates Plaintiff's counsel for their prosecution of this case, and advances the public's interests in

14

rewarding attorneys who bring wage and hour cases. *See, e.g., Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) ("society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

Plaintiff's counsel should also be reimbursed their out-of-pocket expenses and costs in the amount of $6,801.16. "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *20 (S.D. Ohio Nov. 25, 2019). In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id.*

In the prosecution of this case, Plaintiff's counsel incurred out-of-pocket costs of $4,606.25 for fees paid to Plaintiff's economist for evaluating Defendant's pay and time data and creating a damages model, $1,662.50 in mediator's fees, $409.05 for the filing fee and related expenses, and the remaining $122.91 was spent on postage and other administrative expenses. (Moyle Dec. ¶ 26). Because these costs and expenses are reasonable and were incurred in the prosecution of Plaintiff's claims and in administration of the settlement, the Court should preliminarily award Plaintiff's counsel reimbursement of these costs and expenses from the settlement fund, and preliminarily approve payment from the fund for settlement administration costs.

On the basis of these factors, as well as all of the other factors discussed above, the Court should conclude that the Settlement is fair, reasonable, and adequate, and grant preliminary and later final approval under Rule 23(e).

## IV. CONCLUSION

Representative Plaintiff and Defendant request that the Court grant preliminary approval of the Settlement, designate Representative Plaintiff as Class Representative, preliminarily approve Class Representative's request for a Service Award, designate Plaintiffs' Counsel as Class Counsel, preliminarily approve Class Counsel's request for attorneys' fees and costs, and direct distribution of notice to the Class by entering the proposed Preliminary Order attached to the Settlement Agreement as Exhibit C.

Respectfully submitted,

| | |
|---|---|
| *s/ Jeffrey J. Moyle* | *s/ Lauren M. Drabic (with consent)* |
| Jeffrey J. Moyle (0084854) | Stephen S. Zashin (0064557) |
| NILGES DRAHER, LLC | Lauren M. Drabic (0097448) |
| 1360 E. 9th Street, Suite 808 | ZASHIN & RICH CO., L.P.A. |
| Cleveland, OH 44114 | 950 Main Avenue, 4th Floor |
| Telephone: (216) 230-2955 | Cleveland, OH 44113 |
| Fax: (330) 754-1430 | Telephone: (216) 696-4441 |
| jmoyle@ohlaborlaw.com | Fax: (216) 696-1618 |
| | ssz@zrlaw.com |
| Hans A. Nilges (0076017) | lmd@zrlaw.com |
| Shannon M. Draher (0074304) | |
| 7266 Portage Street N.W., Suite D | *Attorneys for Defendant* |
| Massillon, OH 44646 | |
| Telephone: (330) 470-4428 | |
| Fax: (330) 754-1430 | |
| hans@ohlaborlaw.com | |
| sdraher@ohlaborlaw.com | |

*Attorneys for Plaintiff*